UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 95-50885
_____

MARK   SADOVSKY,

Plaintiff-Third Party
Defendant-Appellant,

ELLEN SADOVSKY,

Appellant,

versus

HOWARD HASSLER; JOANNE HASSLER,

Defendants-Third Party
Plaintiffs-Appellees.

_____

Appeal from the United States District Court
for the Western District of Texas
(94-CV-166)
_____

December 16, 1996

Before GARWOOD, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Mark and Ellen Sadovsky challenge, *inter alia*, liability under

the Texas Deceptive Trade Practices-Consumer Protection Act for the

sale of a necklace.  We **AFFIRM**.

I.

---

[*]     Pursuant to Local Rule 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in Local Rule
47.5.4.

For almost 20 years, Howard and Joanne Hassler of New York, New York, purchased items of expensive jewelry from Mark and Ellen Sadovsky of San Antonio, Texas. The Sadovskys, who owned several jewelry stores in Texas, would send pieces of jewelry on approval to the Hasslers in New York. Typically, the items would be sent via armored courier to the Hasslers' son, Matthew Trachtenberg, who would deliver them to his parents. The Hasslers would then decide whether to purchase the items. According to the Hasslers, the Sadovskys always had a "return policy": any item could be returned and its "meltdown value" (cost of its individual components if sold separately) would be refunded to the Hasslers.

In August 1988, the Sadovskys telephoned the Hasslers and told them about an emerald and diamond necklace they had recently received, featuring a 97.8 carat Colombian emerald. Both Mark and Ellen Sadovsky encouraged the Hasslers to purchase the necklace. In addition, the Sadovskys telephoned Trachtenberg about the necklace and told him that he should persuade his parents to buy it.

That August 31, Mark Sadovsky met the Hasslers in New York so they could view the necklace. After examining it and discussing the purchase, the Hasslers paid him $240,000 for it that day. The next day, Mark Sadovsky sent them three "certificates of appraisal" indicating that the necklace had a wholesale value of $298,000, a retail value of $450,000, and that he had heard of a similar necklace being advertised in a magazine for $750,000.

Uncomfortable with the size of the necklace, Joanne Hassler wore it only once and, approximately two years after purchase, returned it to Mark Sadovsky in October 1990 so he could sell it. By the fall of 1991, the Hasslers became concerned that the necklace had not yet been sold. That September and October, Mark Sadovsky had two appraisals sent to the Hasslers, indicating the necklace had a wholesale value of $490,000 to $525,000. One appraiser was the manufacturer of the necklace; *both* were business partners of Ellen Sadovsky.

Despite the problems with selling the necklace, the Sadovskys sent the Hasslers another shipment of jewelry in December 1992. Included in this package was a "ring-dant", a ring with a removable face that could be worn as a pendant. When the package arrived, Joanne Hassler took out the ring, put it on her finger, and left with her husband for a party. Within minutes of arriving at the party, Joanne Hassler discovered that the ring face was missing. The Hasslers searched for it, but never found it.

When Ellen Sadovsky learned that the ring had been lost, she backdated an invoice for it and billed the Hasslers $43,000. Because of this dispute, the Hasslers asked the Sadovskys to return the necklace, which they eventually did in September 1993. The Hasslers had it appraised and discovered that it was worth much less than any of the appraisals given to them; and that the emerald was "highly included" (full of foreign material entrapped in the

- 3 -

stone during the growth process), slightly misshapen, and had been oiled, indicating a possible attempt to conceal cracks.

In October 1993, Mark Sadovsky filed this action in state court against the Hasslers to recover for the loss of the ring-dant. That December 17, he filed for bankruptcy under Chapter 7, and on the same day, filed an amended complaint in state court naming Ellen Sadovsky as plaintiff, although the style of the case still listed him as plaintiff. The Hasslers removed this action to federal court in March 1994 and counterclaimed, *inter alia*, for fraud and violations of the Texas Deceptive Trade Practices-Consumer Protection Act, TEX. (BUS. & COM.) CODE ANN. §§ 17.41-17.50 (DTPA). Both parties consented to trial before a magistrate judge.

Mark Sadovsky did not list the Hasslers as creditors on his bankruptcy schedules until April 4, 1994, only two days before his April 6 discharge and 14 days *after* the March 21 deadline for objecting to discharge and for filing complaints to determine dischargeability of debts. Sadovsky's subsequent motion for summary judgment in this action, based on the ground that the Hasslers' counterclaim was discharged in bankruptcy, was denied.

In response to interrogatories, the jury found both Sadovskys violated the DTPA and committed those acts "knowingly". In response to a separate interrogatory, it also found Mark, but not Ellen, Sadovsky committed fraud. The jury awarded $230,000 on the DTPA claim, $37,000 on the fraud claim, and $75 in punitive

- 4 -

damages.  It also found no negligence on the part of Joanne Hassler concerning the ring-dant and awarded no damages to the Sadovskys.

The Hasslers requested that judgment be entered only on the DTPA claims, and the Sadovskys filed motions for judgment as a matter of law and for new trial.  The magistrate judge denied the Sadovskys' motions and entered judgment on the DTPA claims, including awarding attorneys' fees.

## II.

The Sadovskys present a number of issues.  As always, our standard of review first comes into play.

Mark Sadovsky contends that the Hasslers' counterclaim was discharged in his Chapter 7 bankruptcy proceeding; and that there was insufficient evidence for the jury findings of a knowing DTPA violation and of fraud.  Ellen Sadovsky maintains that no pleadings properly presented a claim against her; and that there was insufficient evidence to support the jury finding a knowing DTPA violation.  Both maintain, in the alternative, that the verdict was against the great weight of the evidence.  And, both assert that the counterclaim was barred by the statute of limitations.

Prior to listing the final issues raised by the Sadovskys, we examine our standard of review for those listed above.  They concede that a motion for judgment as a matter of law was not made at the close of all the evidence with regard to any of these issues.  Accordingly, we look to whether their objections to the

submission of several of the special jury interrogatories serve in its stead.

Such objections that present sufficiency of the evidence issues to the district court can have the "effect of a [Rule 50] motion". *Texoma AG-Products, Inc. v. Hartford Accident and Indem. Co.*, 755 F.2d 445, 448 (5th Cir. 1985); *see also Hinojosa v. City of Terrell*, 834 F.2d 1223, 1228 (5th Cir. 1988), *cert. denied,* 493 U.S. 822 (1989); *Jones v. Benefit Trust Life Ins. Co.*, 800 F.2d 1397, 1401 (5th Cir. 1986). Because we liberally construe Rule 50, we excuse "technical noncompliance" when "the purposes of the rule are satisfied". *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 610 (5th Cir. 1996), *cert. denied*, 65 U.S.L.W. 3220 (U.S. Oct. 7, 1996) (No. 96-153); *see also, MacArthur v. University of Tex. Health Ctr.*, 45 F.3d 890, 897 (5th Cir. 1996). Thus, if an objection to jury instructions allows the district court to re-examine the question of evidentiary insufficiency post-verdict, if necessary, *and* puts the other side on notice of the insufficiency before the case goes to the jury, then Rule 50 is satisfied. *Scottish Heritable Trust*, 81 F.3d at 610-11.

These two purposes were satisfied. The Sadovskys objected to several interrogatories on the grounds that the evidence did not support their submission to the jury and was factually insufficient. Consequently, the Sadovskys have not completely

forfeited their right to challenge the sufficiency of the evidence on appeal. *Id.* at 611.

Therefore, on the issues to which such objections were made -- the claim that the DTPA issue was not raised against Ellen Sadovsky, the sufficiency challenge to the finding of an underlying DTPA violation against Ellen Sadovsky, and the "knowing" DTPA findings against both Sadovskys -- we review the evidence in the light most favorable to the Hasslers. Only if the facts and inferences so overwhelmingly favor the Sadovskys that no reasonable juror could have arrived at this verdict are they entitled to judgment on these issues. *E.g., Guilbeau v. W.W. Henry Co.*, 85 F.3d 1149, 1161 (5th Cir. 1994) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc)).

However, for the issues for which no such objections were made -- the sufficiency challenges to the finding of an underlying DTPA violation against Mark Sadovsky, and to the finding that the Hasslers should have discovered the deceptive act on September 24, 1993 -- we examine the record to determine if there is any evidence to support the verdict, irrespective of its sufficiency. If there is, we uphold the verdict on these issues. *Polanco v. City of Austin, Texas*, 78 F.3d 968, 974 (5th Cir. 1996).

Returning to the final issues presented by the Sadovskys, they contend that the magistrate judge erred in the amount of damages awarded and in awarding attorneys fees. And, Ellen Sadovsky

challenges the take nothing judgment on her ring-dant claim.  The standards of review for these final issues are discussed with them *infra*.

### A.

As discussed *supra* and *infra,* in addition to finding that both Sadovskys violated the DTPA and awarding $230,000 on that claim, the jury, in response to a separate interrogatory, found that Mark, but not Ellen, Sadovsky committed fraud and awarded $37,000 on that claim.  But, both awards concerned the same item -- the necklace.

Accordingly, Mark Sadovsky's sufficiency challenge to this fraud finding can be rejected quickly.  As noted, the Hasslers elected entry of judgment only on the DTPA claim; because judgment was not entered on the fraud claim, this issue is moot.

### B.

Mark Sadovsky maintains that the Hasslers' counterclaim against him was discharged by the bankruptcy court, 11 U.S.C. § 524.  The Hasslers rely on 11 U.S.C. § 523(a)(2)(A) -- excepting from discharge all claims for money obtained by "false pretenses, false representations, or actual fraud" -- and assert as well that their claims were not scheduled in time "to permit ... timely request for a determination of dischargeability of such debt".  **Id.** § 523(a)(3)(B).  Sadovsky raised this issue in his earlier noted summary judgment motion and in a post-verdict motion for judgment.

Needless to say, this summary judgment denial is not

reviewable.  As reaffirmed in **Black v. J.I. Case Co.**, 22 F.3d 568 (5th Cir.), *cert. denied*, 115 S. Ct. 579 (1994), "an interlocutory order denying summary judgment is not to be reviewed where final judgment adverse to the movant is rendered on the basis of a subsequent full trial on the merits."  **Id.** at 570.

Of course, the denial of the post-verdict motion can be reviewed if, at the close of all the evidence, Sadovsky moved under Rule 50(a) for such judgment.  *E.g.,* **Hinojosa,** 834 F.2d at 1228; FED. R. CIV. P. 50.  Rule 50(a) motions should include *all* possible grounds for judgment, including arguably "legal" grounds that might not present jury-triable issues.  **Black**, 22 F.3d at 571 n.5.  **Black** rejected a "dual system" for reviewing denied summary judgment motions -- where orders based on "legal" grounds would be reviewable, but those based on "factual" grounds would not -- precisely because "[i]f [Rule 50] motions are properly made ... the 'legal' issues determined by the district court are freely reviewable".  **Id.**

As discussed *supra*, although the Sadovskys' jury interrogatory objections arguably satisfied Rule 50(a) on sufficiency of the evidence grounds, he did not so present this discharge-in-bankruptcy issue, an affirmative defense to the Hasslers' counterclaim, as a ground for judgment.  Consequently, we review only for plain error, and find none.  *See, e.g.,* **Highlands Ins. Co. v. National Union Fire Ins. Co.**, 27 F.3d 1027, 1031-32 (5th Cir.

- 9 -

1994) (applying plain error rule in civil cases), *cert. denied*, 115 S. Ct. 903 (1995).

### C.

The Sadovskys challenge the DTPA findings. They do so on sufficiency and other grounds.

### 1.

First, Ellen Sadovsky contends that there were no pleadings against her on the Hasslers' counterclaim; therefore, she was never put on notice of her potential liability for a DTPA violation. The Hasslers counter, correctly, that the pleadings were sufficient, that Ellen Sadovsky received additional notice prior to the trial, and that she tried the issue by consent.

The counterclaim identifies Ellen Sadovsky as a defendant; and, it requests damages from her and Mark Sadovsky, jointly and severally. She was given additional notice with the joint submission of the proposed jury instructions, a week before trial. *See Ah Moo v. A.G. Becker Paribas, Inc.*, 857 F.2d 615, 619 (9th Cir. 1988). Moreover, she did not move for a more definite statement, Rule 12(e), or for judgment on the pleadings, Rule 12(c). *See Ah Moo*, 857 F.2d at 619.

Assuming *arguendo* that the counterclaim was insufficient, the Sadovskys tried the issue by consent. In such an instance, the issue "shall be treated in all respects as if [it] had been raised in the pleadings". FED. R. CIV. P. 15(b). Failure to amend the

- 10 -

pleadings to conform to the evidence "does not affect the result of the trial of these issues". *Id.*

An issue is tried by consent if each side recognizes that it entered the case at trial, if evidence supporting the unpled issue was introduced at trial without objection, and if a finding of trial by consent would not prejudice the opposing party's opportunity to respond. *See* **United States v. Shanbaum**, 10 F.3d 305, 312-13 (5th Cir. 1994). A cursory glance at the record reveals that each side must have been well aware that Ellen Sadovsky's potential liability under the DTPA for the sale of the necklace was being litigated. Also, she did not object, at trial, to testimony about her involvement with its sale, implicitly trying the issue by consent. In an *in limine* motion, she did object to testimony about her involvement; but, this denied motion is insufficient to preserve error for appeal. *E.g.,* **Marcel v. Placid Oil Co.**, 11 F.3d 563, 566-67 (5th Cir. 1994). And she has neither claimed nor shown prejudice.

2.

We next address the sufficiency of the DTPA findings. The DTPA provides, in part:

> A consumer may maintain an action where any of the following constitute a producing cause of actual damages:
> (1) the use or employment by any person of a false, misleading, or deceptive act or practice ...;
> ...

                    (3) any unconscionable action or course
             of action by any person ....

TEX. (BUS. & COM.) CODE ANN. § 17.50(a)(1),(3).

        For subpart (1), "false, misleading, or deceptive act or
practice" is not defined but includes a "laundry list", *Cravens v.*
*Skinner*, 626 S.W.2d 173, 175 (Tex. Ct. App. 1981), of enumerated
actions,  TEX. (BUS. & COM.) CODE ANN. § 17.46(b).  Four of these were
listed in the jury charge: (1) representing that goods or services
had characteristics that they did not have; (2) representing that
goods or services were of a particular quality if they were of
another; (3) representing that an agreement confers rights that it
did not confer; and (4) failing to disclose information about goods
or services that was known at the time of the transaction with the
intent to induce another into a transaction.

        For subpart (2), on the other hand, an "unconscionable action"
is one which takes "grossly unfair" advantage of a person's "lack
of knowledge, ability, experience, or capacity" or results in a
"gross disparity between the value received and consideration
paid".  TEX. (BUS. & COM.) CODE ANN. § 17.45(5).  The jury found in
response to separate interrogatories that both a "laundry list"
violation and an "unconscionable" act had been proven against both
Sadovskys.

                                    a.

        Mark Sadovsky contends that his statements were merely
opinions of worth and replacement cost, not of the characteristics

                                  - 12 -

of the necklace and, therefore, *inter alia,* are not actionable as "laundry list" violations. The Hasslers respond that his statements are, among other things, actionable on this basis because they misrepresented the characteristics and quality of the necklace and the details of the return policy and failed to disclose known information at the time the necklace was sold. *Id.* § 17.46(b)(5),(7),(12),(23).

For our purposes, however, we need not decide whether representations of value are actionable as laundry list violations; there was evidence that Mark Sadovsky made other representations that support DTPA "laundry list" liability. As discussed *supra,* because this issue was not properly preserved, our review is limited to whether any evidence supports the verdict. But, because this issue overlaps with others, especially the DTPA finding as to Ellen Sadovsky, we go into greater detail than necessary for the narrow standard of review on this point.

Under Texas law, a misrepresentation of material fact is actionable under the DTPA as long as it is not mere "puffery" on the part of the salesman. ***Pennington v. Singleton***, 606 S.W.2d 682, 687 (Tex. 1980). Along this line, Texas courts consider the levels of knowledge of the buyer and seller as well as the buyer's knowledge compared to the seller's. ***Autohaus, Inc. v. Aguilar***, 794 S.W.2d 459, 463 (Tex. Ct. App. 1990), *error denied*, 800 S.W.2d 853 (Tex. 1991). Where a seller has special knowledge about a product

that is superior to a buyer's, a representation is much less likely to be treated as mere puffery. *Id.* In addition, a statement need not be very specific to be actionable; it need only "convey definite implications" about the product or its attributes. *Pennington*, 606 S.W.2d at 687.

Joanne Hassler testified that Mark Sadovsky told her the emerald in the necklace was "the finest" and the necklace was "the finest workmanship". Mark Sadovsky had been a jeweler in the trade for 30 years. The Hasslers had purchased jewelry from him for approximately 20 of those years but had no knowledge of, or experience in, the jewelry business. In fact, Mark Sadovsky admitted that the Hasslers relied on and trusted him on "matters pertaining to the value, condition, and quality" of jewelry they purchased from him.

Therefore, although the Hasslers were certainly not first-time purchasers of jewelry, they relied on Sadovsky's experience and knowledge as a professional jeweler when purchasing items from him, including the necklace, taking his statements beyond the ambit of mere puffery. In addition, his statements conveyed the definite impression that the necklace was of extremely high quality. In *Pennington*, 606 S.W.2d at 687, the Texas Supreme Court found that words like "excellent" and "perfect" used by the seller of a boat to describe its condition indicated a high degree of quality. Accordingly, Mark Sadovsky's descriptions of the emerald and the

workmanship of the necklace were sufficiently specific to be actionable under the DTPA as misrepresentations of material fact.

The Hasslers presented expert testimony that the emerald was only of average quality. On the clarity scale, the stone was classified as "highly included"; the cutting grade of the stone was "good-fair"; the finish grade was "good". In addition, there was moderate to strong evidence of clarity enhancement through the use of oil, a technique often used to improve the appearance of a cracked and fractured stone. Finally, Mark Sadovsky testified that the emerald was only of "medium" quality.

In short, because Mark Sadovsky misrepresented the quality and grade of the necklace, there was evidence to support the jury finding a DTPA violation. TEX. (BUS. & COM.) CODE ANN. § 17.46(b)(7). Accordingly, our narrow standard of review for this issue is satisfied.

### b.

Ellen Sadovsky attacks, on a number of grounds, the jury finding an underlying DTPA violation against her. We need address only one contention: that there was no evidence that she made any statements regarding the quality or characteristics of the necklace to the Hasslers. As discussed *supra*, because she objected to the pertinent jury interrogatory on grounds of factual insufficiency, we review under our usual "reasonable juror" standard.

- 15 -

The Hasslers' son, Trachtenberg, testified that both Sadovskys telephoned him prior to the sale and described the emerald in the necklace as "an investment grade emerald of the very highest quality, very unusual in its size. That it was spectacular". As noted, they also told him he should persuade his parents to buy the necklace. According to Trachtenberg, this conversation probably took place while he was at his parents' home. According to him, the Sadovskys also told him, among other things, that the necklace was "an extraordinary opportunity for my parents", and "a phenomenal value", they "encouraged me to tell my parents that this was the opportunity of a lifetime." As discussed *supra*, Trachtenberg was involved in a number of the shipments of jewelry to them. An armored courier would deliver the items to his office, and he had to coordinate these deliveries with his parents and the Sadovskys.

Neither side asked Trachtenberg whether he relayed the Sadovskys' statements about the necklace to his parents. Either they did not want to do so and were content to "lie behind the log", or forgot to do so. In any event, our review of the record, especially Trachtenberg's testimony, in the requisite light most favorable to the Hasslers, suggests strongly that he did; certainly, a reasonable juror could have found that he did. For example, he testified that the Sadovskys told him in the telephone conversation that the necklace had originally been prepared for a

customer who intended to give it to the wife of the President of Mexico. In earlier testimony, Howard Hassler related the same information without stating his source for it. And, prior to relating this information about the earlier intent for a gift for the wife of the President of Mexico, Trachtenberg made the following statement, upon which a reasonable juror could have found that he relayed the information from the Sadovskys to his parents: "They told me a little bit about the history of the [necklace], I guess to increase my enthusiasm, so I would tell it to my folks."

Alternatively, the testimony by the parties could not have conflicted more sharply. The Sadovskys denied even having a conversation with Trachtenberg about the necklace; yet he described it in great detail. In short, this was a call for the jury to make, and it was instructed about the inferences it could draw. Based on our review of the record, again in the light most favorable to the Hasslers, we conclude that, although the necklace was not sent through Trachtenberg, a reasonable inference is that he would have relayed to his parents, as a matter of course, any information the Sadovskys gave him about the items they were sending. Moreover, as noted, they asked him to persuade his parents to purchase the necklace. Specifically, a reasonable juror could have inferred that he relayed to his parents what the Sadovskys told him about the necklace. This is especially true in light of his very responsible work experience, his extremely close relationship with his parents, and his understanding of the close

and long standing relationship between them and the Sadovskys. As noted, he received the telephone call at their home. Consequently, based upon either such a direct finding or such an inference, there was sufficient evidence for a reasonable juror to conclude that Ellen Sadovsky committed a DTPA violation.

In the futher alternative, we conclude that, pursuant to the earlier discussed law for finding a DTPA violation, that finding against Ellen Sadovsky is supported by the information she provided the Hasslers about the necklace prior to its purchase. According to Joanne Hassler, Ellen Sadovsky told her the necklace was a "good value", "incredible", and "something she shouldn't pass up". Texas courts have held that opinion and "puffing" are not actionable. *See* **Autohaus, Inc.,** 794 S.W.2d at 462. Determining whether a statement is an opinion or a representation of fact is the key. One court explained: "Imprecise or vague representations constitute mere opinions." **Id.** Yet, as discussed *supra,* even general statements about a good may be actionable if they "convey definite implications" about the product or its attributes. *See* **Pennington,** 606 S.W.2d at 687.

As also noted, in **Pennington,** a boat's condition was described as "excellent" and "perfect"; those statements were sufficiently specific to support DTPA liability. On the other hand, in **Autohaus, Inc.,** 794 S.W.2d at 460-61, a salesman described a Mercedes Benz as the "best engineered car in the world" and assured

a buyer that he "probably would not find that [he] would ever encounter any mechanical difficulties". The court found these statements to be not specific enough to be actionable. Based upon our review of the record, Ellen Sadovsky's statements are more akin to the statements in *Pennington* than to those in *Autohaus, Inc.*

In conjunction with this, the Hasslers contend that Ellen Sadovsky's statements are actionable because she claimed to, or did, have special knowledge about the necklace. As also discussed *supra*, Texas courts do recognize that "superior knowledge" on the part of a seller coupled with a buyer's "relative ignorance" can turn an opinion into a representation of fact. *See Autohaus*, *Inc.*, 794 S.W.2d at 463. As discussed below, concerning a "knowing" violation of the DTPA, the record supports the jury finding such contrasting positions between the Hasslers and Ellen Sadovsky. In sum, based on our review of the record, this is one additional reason for our concluding, pursuant to our reasonable juror standard of review, that sufficient evidence supported this part of the verdict.

3.

The Sadovskys next attack the sufficiency of the jury's finding that each committed their DTPA violations "knowingly". As discussed *supra*, because they preserved their sufficiency challenge on this issue, we review under our usual "reasonable juror" standard.

- 19 -

The DTPA defines "knowingly" as "actual awareness of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim".  TEX. (BUS. & COM.) CODE ANN. § 17.50(b)(1).  The jury may infer "actual awareness" if there are "objective manifestations that a person acted with actual awareness".  **_Haynes & Boone v. Bowser Bouldin, Ltd._**, 864 S.W.2d 662, 673 (Tex. Ct. App. 1993), _rev'd on other grounds_, 896 S.W.2d 179 (Tex. 1995).  And, the DTPA permits a jury to award up to three times the amount of actual damages if such a finding is made.  Tex. (Bus. & Com.) Code Ann. § 17.50(b)(1).  The jury awarded $15,000 for such additional damages.

### a.

Mark Sadovsky contends that there was no evidence that he knew the necklace was not worth the amount he said it was worth or what he estimated it would cost to construct (i.e., his estimate of the "meltdown" value).  But, Joanne Hassler testified that he told her, at the time of the sale, that the emerald was "the finest", that the necklace was "the most incredible thing [Mark Sadovsky] had ever seen", and that it would be a good investment.  In contrast, Mark Sadovsky testified that the emerald was "nice", that it was of "medium" quality -- "not an extremely high quality emerald" -- and that he would never tell anybody to invest in jewelry.

In addition, the emerald had an uneven cut, a defect that was partially hidden from view by the way the stone was set in the gold

backing.  The Hasslers' expert testified that the cut of the emerald would affect its value.  And, Sadovsky testified that he was aware of the uneven cut, but did *not* tell the Hasslers about this defect because he did not think it affected the price of the necklace.

Needless to say, the jury was free to credit one witness' testimony over another.  A reasonable juror could have concluded that Mark Sadovsky was aware that the value of the necklace was far lower than his asking price.

b.

Ellen Sadovsky maintains that there was no evidence indicating she was actually aware of any false representations to the Hasslers.  But, as noted above, in addition to her statements to Joanne Hassler, there was sufficient evidence for the jury to conclude that her statements to Trachtenberg were relayed to the Hasslers.  In addition, there was evidence that she had experience with the sale of jewelry.

The Hasslers dealt with *both* Sadovskys when purchasing items and receiving shipments to examine, and both Hasslers testified that they would discuss jewelry pieces with both Sadovskys, strengthening the inference that Ellen Sadovsky was knowledgeable about the items of jewelry sent to the Hasslers, including the necklace.  Moreover, the October 10, 1991, appraisal from John Marques to the Hasslers, estimating the necklace's "current market

value" at $490,000, was sent four days before Marques signed an assumed name certificate with Ellen Sadovsky, forming American Jewel-Tech, Ellen Sadovsky's new jewelry business. A reasonable juror could conclude that Ellen Sadovsky was aware that the necklace was not as she had represented it.

D.

Contending that the verdict was against the great weight of the evidence, the Sadovskys maintain that the magistrate judge erred in denying their new trial motion. The denial is reviewed only for abuse of discretion. *See* **Burroughs v. FFP Operating Partners, L.P.**, 28 F.3d 543, 550 (5th Cir. 1994). And, a "district court abuses its discretion only where 'there is an "absolute absence" of evidence to support the jury's verdict.'" **Id.** (quoting **Pagan v. Shoney's, Inc.**, 931 F.2d 334, 337 (5th Cir. 1991)).

As discussed, the record is replete with evidence that the Sadovskys sold an item of jewelry to the Hasslers for as much as four times its actual value, representing to them that it was a high quality item, when expert testimony established that statement to be, at the least, very questionable. In addition, as also discussed, there was evidence to support an inference of actual awareness of the deception on the part of the Sadovskys. In sum, there was no abuse of discretion.

E.

In answer to two interrogatories, the jury found "the Hasslers, in the exercise of reasonable diligence," should "have discovered all the false, misleading, or deceptive acts or practices" and "the misrepresentations" by September 24, 1993. The Sadovskys challenge this finding, and in conjunction, contend that the counterclaim was barred by the statute of limitations. As discussed *supra*, because they did not object to the jury interrogatory on this issue, we review the record to determine if there is any evidence to support the verdict.

Under the DTPA, a consumer must bring an action within two years from the date the deceptive act occurred or within two years from the date he discovers, or "in the exercise of reasonable diligence" should have discovered, the occurrence of the deceptive act. TEX. (BUS. & COM.) CODE ANN. § 17.565. As noted, the jury found that the Hasslers should have discovered the misrepresentations on September 24, 1993. Therefore, based on this finding, the March 1994 counterclaim was filed within the limitations period.

The Sadovskys base their challenge on the fact that five years elapsed between when the Hasslers purchased the necklace (August 31, 1988) and when they first had it independently appraised (September 24, 1993), and because Howard Hassler questioned the value of the necklace as early as October 1991.

Mark Sadovsky had the necklace in his possession from mid-October 1990 until late September 1993. He conceded that, during

this time, it was impossible for the Hasslers to obtain an independent appraisal. Therefore, the fact that Howard Hassler may have questioned the necklace's value in October 1991 is irrelevant; there was no way the Hasslers could have learned of a deceptive act in that time period. In addition, while Mark Sadovsky was in possession of the necklace, the Hasslers received two appraisals procured by Mark Sadovsky and one appraisal from Sadovsky himself, all indicating that the necklace was worth substantially more than the $240,000 paid by the Hasslers. Moreover, the Hasslers had the necklace appraised within two days of its return by Mark Sadovsky, indicating a diligent attempt to determine its true value. Consequently, there is evidence in the record to support this finding.

F.

The Sadovskys next assert that the jury award of $215,000 in actual damages was excessive and unsupported by the evidence. An award of damages is reviewed under a deferential standard; it is disturbed only where it is "clearly erroneous". *Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 462 (5th Cir. 1995).

In *W.O. Bankston Nissan, Inc. v. Walters*, 754 S.W.2d 127 (Tex. 1988), the Texas Supreme Court stated the two possible measures of actual damages for a DTPA violation: the "out of pocket" measure ("difference in value of that which was *parted with* and the value of that *which was received*") and the "benefit of the bargain"

measure ("difference between the value *as represented* and the value *actually received*"). *Id.* at 128 (emphasis added). A prevailing DTPA plaintiff is entitled to recover under the measure that provides the greater damages. *Id.* The jury was instructed on both measures.

As noted, the Sadovskys represented at the time of sale that the wholesale value of the necklace was $298,000, that its retail value was $450,000, and that it had been advertised for $750,000 in a magazine. One expert for the Hasslers appraised its wholesale value at $60,000 and retail value at $120,000. Using the "benefit of the bargain" measure, and either the wholesale or retail figures, the award could have been greater than the $215,000 awarded. In short, the award was not clearly erroneous.

### G.

In conjunction with their claim that the Hasslers cannot recover under the DTPA, the Sadovskys assert that the Hasslers cannot recover attorneys' fees. Under the DTPA, a prevailing party "*shall* be awarded court costs and reasonable and necessary attorneys' fees". TEX. (BUS. & COM.) CODE ANN. § 17.50(d) (emphasis added). Because, as discussed *supra*, we affirm judgment for the Hasslers on their DTPA claim, they were entitled to the fees-award.

### H.

Finally, Ellen Sadovsky contests the adverse jury finding on her negligence claim against Joanne Hassler for the value of the

ring-dant, and contends, in the alternative, that the magistrate judge erred in denying her new trial motion because the finding is against the great weight of the evidence.  We review the sufficiency claim under our reasonable juror standard and the new-trial-denial for abuse of discretion.

It goes without saying that, to prove negligence, a party must show breach of a legal duty proximately resulting in damages. *E.g.,* **Doe v. Boys Clubs of Greater Dallas, Inc.**, 907 S.W.2d 472, 477 (Tex. 1995).  Joanne Hassler's legal duty was to use ordinary care in handling the items sent to her -- to "act as a reasonable prudent person under the same or similar circumstances".  *See* **Atchison, T. & S.Fe. Ry. v. Standard**, 696 S.W.2d 476, 478 (Tex. Ct. App. 1985).

Ellen Sadovsky testified that she enclosed a letter in the box containing the ring-dant, which warned Joanne Hassler that it had a removable face; but, both Hasslers testified that this letter was not in the box.  If the jurors credited Joanne Hassler's testimony over Ellen Sadovsky's, as they were free to do, then Joanne Hassler had no warning about the removable face.  And, there was evidence that Mark Sadovsky wanted Joanne Hassler to wear in public the pieces he sent to her on approval.  Finally, the jury was given the opportunity to examine similar ring-dants to see how the mechanism worked.  In sum, it had ample evidence on which to conclude that

Joanne Hassler was not negligent.  Consequently, the sufficiency and new trial issues are without merit.

III.

For the foregoing reasons, the judgment is

*AFFIRMED.*

Garwood, Circuit Judge, concurring in part and dissenting in part:

I concur in all the well-considered majority opinion except Part II. C. 2. b. rejecting Ellen Sadovsky's challenge to the sufficiency of the evidence that she made any DPTA actionable statements to the Hasslers in connection with their purchase of the necklace.  More specifically, I am unable to agree that the jury could infer that Ellen's statements about the necklace made to the Hasslers' son, Trachtenberg, were in any way relayed to either Hassler before they purchased the necklace.  This was a matter on which the Hasslers had the burden of proof.  The Hasslers and Trachtenberg would know (and would likely be the only persons who would know) whether such statements were thus relayed; although they all testified as witnesses on the Hassler side of the case, none of them testified that Ellen's statments to Trachtenberg about the necklace were relayed to either Hassler at any time.  Nor is there any other evidence so indicating.  The inference thus must be that the statements were *not* so relayed, the long established rule being that the failure of a party to introduce evidence peculiarly available to him on an issue as to which he has the burden of proof

gives rise to the inference that the evidence would be unfavorable to him. *See, e.g., Friedrich v. Com'r*, 925 F.2d 180, 185 (7th Cir. 1991); *McCormick on Evidence* 3d ed. § 272. The fact that Howard Hassler recited at trial—seven years after the sale—the same history of the necklace that Trachtenberg testified Ellen had related to him proves nothing. Hassler did not testify when or from whom he learned that information, and he obviously could have learned it from Ellen or Trachtenberg or otherwise years after the sale. Moreover, the above mentioned inference is applicable here also.

Ellen's statements to Joanne Hassler a week before the sale—statements made in a context lacking any reference to any monetary figure or range of figures and a week before any price or price range was first mentioned when Mark alone brought the necklace to the Hasslers—that the necklace was a "good value," "incredible," and "something she shouldn't pass up," do not suffice. Certainly as applied to a necklace having no previously listed price and with a conceded retail value of over $100,000, these statements amount to no more than mere puffing or statements of opinion, particularly by one, such as Ellen, who, though sometimes in the jewelry business, was not and did not purport to be a jeweler or appraiser. *See, e.g., Cravens v. Skinner*, 626 S.W.2d 171 (Tex. App.—Ft. Worth 1981, no writ).

I dissent from the affirmance of the DPTA judgment against Ellen Sadovsky. Otherwise, I concur.